# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 4, 2023

Lyle W. Cayce
Clerk

No. 21-60320

CHAZ PINKSTON,

*Plaintiff—Appellee,*

*versus*

DOCTOR HENDRICK KUIPER, MEDICAL DIRECTOR,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:17-CV-39

Before HIGGINBOTHAM, JONES, and OLDHAM, *Circuit Judges.*

PER CURIAM:*

A medical doctor ordered that a distressed prisoner receive medication. Afterward, the prisoner sued, arguing that the doctor violated the prisoner's due process rights. The district court agreed. We do not, and we reverse.

---

* This opinion is not designated for publication. See 5TH CIR. R. 47.5.

No. 21-60320

## I.

Chaz Pinkston is a Mississippi state inmate. Dr. Hendrick Kuiper is a physician, and at relevant times was the medical director at the state facility where Pinkston was housed. Because Pinkston suffers from a complex psychiatric profile that includes narcissistic personality disorder and a history of hunger strikes, Pinkston's cell was inside the facility's medical unit.

The genesis of this litigation occurred one morning in September 2016. Pinkston complained of a skin problem on his leg. Dissatisfied with a prison nurse's response, Pinkston began yelling, imitating animal noises, and kicking against his cell door. Pinkston continued for more than three hours. He also threatened violence against medical staff. As a result of Pinkston's incitement, other prisoners, many of whom were also psychiatric patients, began to act similarly.

Dr. Kuiper heard this disturbance from his position one floor below Pinkston. Kuiper went to the scene, as did as many as nine other staff members. There, Kuiper asked Pinkston to desist several times. Pinkston did not. Kuiper then ordered that Pinkston receive two injections: Haldol, an antipsychotic, and Benadryl, an antihistamine intended as a prophylactic against any complication from Haldol. Pinkston went to sleep following the injections, and nearby inmates quieted down.

Afterward, Pinkston filed a 42 U.S.C. § 1983 suit alleging that Dr. Kuiper's decision to forcibly medicate Pinkston violated Pinkston's civil rights. The district court, relying on Fourteenth Amendment substantive due process jurisprudence and out-of-circuit opinion, agreed.

Dr. Kuiper timely appealed. We have jurisdiction to review the district court's final judgment. *See* 28 U.S.C. § 1291. We review the district court's legal conclusions de novo and its factual findings for clear error. *See Adkins v. Kaspar*, 393 F.3d 559, 563 (5th Cir. 2004).

No. 21-60320

## II.

When a plaintiff files a 42 U.S.C. § 1983 suit alleging a constitutional infraction, the "first inquiry" is to "isolate the precise constitutional violation with which the defendant is charged." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

We first (A) explain why Pinkston's claim is best understood as an Eighth Amendment claim. Then we (B) resolve that claim.

## A.

The Eighth Amendment protects federal prisoners from "cruel and unusual punishments." U.S. Const. amend. VIII. That means prisoners are protected from "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

The "wanton infliction of pain" standard provides the bridge between the Eighth Amendment's cruel and unusual punishment guarantee and a prisoner's right to medical care. Because the Supreme Court considers "deliberate indifference to serious medical needs" functionally equivalent to the "wanton infliction of pain," the Court has held that the Eighth Amendment prohibits such indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation omitted).

This "deliberate indifference" standard applies to claims based on a defendant's acts, not just his omissions. *Id.* at 106. We have held that the decision to provide treatment is "a classic example of a matter for medical judgment" and subject to Eighth Amendment resolution. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotation omitted). We have repeatedly applied the Eighth Amendment in other cases where prisoners challenged providers' affirmative acts. *See Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (indicating deliberate indifference applies when a prisoner claims

officials "intentionally treated him incorrectly"); *Bias v. Woods*, 288 F. App'x 158, 162 (5th Cir. 2008) (applying deliberate indifference to a provider's decision to order medical transport).

Dr. Kuiper's decision to medically intervene falls within the Eighth Amendment's ambit. In an alternative world where Dr. Kuiper decided against intervention, claims for resulting injury would be reviewable under the deliberate indifference standard. The standard for evaluating Dr. Kuiper's decision and its consequences does not change merely because in this world, Dr. Kuiper made that decision differently.

The parties and the district court resist this conclusion and instead frame this dispute as a matter of Fourteenth Amendment substantive due process. They rely on the Supreme Court's statement in *Washington v. Harper*, 494 U.S. 210 (1990), that individuals possess "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Id.* at 221. In *Harper*, the Supreme Court held that the State must afford a prisoner minimal procedural protection before subjecting him to a forcible, long-term regimen of antipsychotic injections. *Id.* at 228–31. The Supreme Court later relied on *Harper* when it recognized a pre-trial detainee's Fourteenth Amendment interest in avoiding repeated injections over a six-month interval. *See Riggins v. Nevada*, 504 U.S. 127, 130–31, 135 (1992). And in this case, the district court held that *Harper* and *Riggins* required Dr. Kuiper to hold a hearing before providing care to a plainly distressed Pinkston.

But neither *Harper* nor *Riggins* articulated constitutional standards governing the isolated administration of a single dose of an antipsychotic in a threatening, time-sensitive prison situation. Moreover, the Supreme Court has instructed us not to apply the Fourteenth Amendment's substantive-due-process catchall when another, more specific constitutional provision

No. 21-60320

applies. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims'" (quoting *Graham*, 490 U.S. at 395)).

*Harper* and *Riggins* therefore do not apply.[†]

B.

Under the Eighth Amendment, Pinkston's claim fails. The Eighth Amendment requires Pinkston to satisfy an "extremely high" deliberate indifference standard. *See Gobert*, 463 F.3d at 346 (quotation omitted). Negligence or even medical malpractice does not independently support a prisoner's Eighth Amendment deliberate indifference claim. *Estelle*, 428 U.S. at 105–06. Rather, a deliberate indifference plaintiff must show that the defendant

(1) was aware of facts from which the inference could be drawn that substantial risk of serious harm exists; (2) subjectively

---

[†] Nor can Pinkston contend that bodily integrity claims are somehow different. We long ago foreclosed that contention. *See Austin v. Johnson*, 328 F.3d 204, 210 n.10 (5th Cir. 2003) (deciding that, where custodial plaintiff brought a bodily integrity claim, the Eighth Amendment "defines the limits of government action" and "controls over the more generalized notion of substantive due process" (quotations omitted)).

drew the inference that the risk existed; and (3) disregarded the risk.

*Cleveland v. Ball,* 938 F.3d 672, 676 (5th Cir. 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The record is devoid of evidence that Dr. Kuiper subjectively disregarded significant risk to Pinkston. That alone disposes of this case. Far from showing deliberate indifference, the record instead suggests that Dr. Kuiper believed medicating Pinkston was necessary to avoid danger to both Pinkston and others. The fact that Dr. Kuiper prescribed Benadryl as prophylaxis against any risk from Haldol further supports our conclusion that Dr. Kuiper believed his actions consistent with Pinkston's medical need.

The district court, leveraging hindsight, might disagree with Dr. Kuiper about the objective necessity of medicating Pinkston. But *post hoc*, objective determinations are irrelevant. The deliberate indifference standard asks only whether the defendant's subjective, *ex ante* choices reflect deliberate indifference. *See Cleveland*, 938 F.3d at 676. Dr. Kuiper's did not.

## III.

Even if we did apply the Fourteenth Amendment, the result would not change.

Because the parties raise it, we consider the example set by our sister circuit in *Hogan v. Carter*, 85 F.3d 1113 (4th Cir. 1996). That case considered a medical practitioner's choice to administer an emergency dose of antipsychotic Thorazine to an enraged inmate who, like Pinkston, was kicking against his door and behaving aggressively toward staff over a period of several hours. *Id*. at 1114. Like Pinkston, the plaintiff in *Hogan* argued that he was entitled to a hearing before medication. *Id*. at 1115.

No. 21-60320

In *Hogan*, the *en banc* Fourth Circuit appeared to frame the question presented as one of procedural due process. *See id.* at 1117 ("Due process . . . calls for such procedural protection as the particular situation demands." (quotation omitted)). The Fourth Circuit decided that the Supreme Court in *Washington v. Harper* "did not have before it, and did not address," what procedure might be required in Hogan's emergency circumstances. *Id.* at 1116. The Fourth Circuit then concluded that the Constitution does not require "adversary proceedings at any hour of the night" while "the very inmates for whose protection the state is constitutionally responsible remain in danger of injury at their own hands." *Id.* at 1117.

The Fourth Circuit's decision comports with the law in this Circuit, which similarly recognizes that emergency circumstances justify the abbreviation or elimination of pre-deprivation procedures like hearings. *See Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (*en banc*) ("Not even an informal hearing, however, must precede a deprivation undertaken to protect the public safety."). That's in part because the procedure due in each case varies with the circumstances of that case and the competing interests involved. *See Harper*, 494 U.S. at 229 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *Hogan*, 85 F.3d at 1117; *Caine*, 943 F.3d at 1412. So, if we were to resolve Pinkston's claims using a Fourteenth Amendment procedural due process framework, we would consider not only his liberty and medical interests, but also the significant government interest in "maintaining institutional security and preserving internal order" within his penitentiary. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Here, Pinkston received more than the procedure he was due.

Pinkston's principal counterargument is that he received no process at all. We disagree. It's not as if Dr. Kuiper suddenly and arbitrarily injected Pinkston. Rather, Dr. Kuiper injected him only after Pinkston precipitated a disturbance that subjectively appeared imminently dangerous, only after

No. 21-60320

multiple rounds of verbal persuasion failed, and only after a licensed medical professional determined that medication was appropriate.

* * *

The district court erred when it declined to apply an Eighth Amendment framework to Pinkston's dispute over medical treatment. And, even if a Fourteenth Amendment framework were apposite, Pinkston received all the process he was due. We REVERSE the judgment of the district court and render judgment for Dr. Kuiper.